THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
PAUL W. FUERSTEN, PLAINTIFF IN ERROR.

Argued October 28, 1926—Decided January 31, 1927.

1. Evidence considered, and *held,* that the verdict of murder in the first degree is not against the weight of the evidence.
2. All that the judge says in his charge upon a given topic must be considered as a whole, and if, when so considered, it is correct, not in conflict, and not misleading to the jury, it will not lead to a reversal.

State v. Fuersten. *103 N. J. L.*

3. The mere fact that a trial judge in his charge stated a second time a correct and pertinent proposition of law will not justify a reversal as prejudicial to the defendant.

4. In a criminal trial it is always the right and often the duty of the judge to comment upon the evidence, and to tell the jury how the testimony strikes his mind, both as to its force and the inferences which he would draw from it, and such expressions will not lead to a reversal so long as the right and duty of the jury to decide for themselves all disputed questions of fact is pointed out in the charge.

5. In a criminal trial, the mere fact that, in commenting on the evidence upon certain phases of the case, the judge does not state all of the evidence, will not lead to a reversal so long as none of the material evidence is withdrawn from the consideration of the jury.

6. A conviction in a criminal case will not be reversed for an error in the exclusion of evidence which was not prejudicial to the defendant.

7. No prejudicial error results from sustaining an objection to a question put to the defendant in a criminal case, where later during his examination he is permitted to testify, in effect, to the fact sought to be proved.

8. In a criminal case where on review the defendant contends that evidence was improperly excluded, and it appears that substantially the same question had been theretofore asked by the same counsel of the same witness and was answered responsively, the exclusion of the evidence in question is not prejudicial to the defendant and will not lead to a reversal.

9. In a criminal case, a ruling on evidence will not lead to a reversal when it appears that the defendant's counsel at the time expressly stated that he agreed with the ruling.

10. In a criminal case, the refusal of the trial judge to allow a leading question to be put by the defendant's counsel to the defendant, whom he had called as a witness, is a discretionary matter, and will not lead to a reversal in the absence of a palpable abuse of discretion resulting in prejudice to the defendant.

11. The denial by the trial court of an application for a new trial in a criminal case is not reviewable by writ of error, either as at common law or under the provisions of section 136 of the Criminal Procedure act of 1898.

On error to the Camden County Oyer and Terminer Court.

For the plaintiff in error, *Thomas B. Curley* and *Harry Heher*.

For the defendant in error, *Ethan P. Wescott,* prosecutor of the pleas, and *Joseph Varbalow,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J. Paul W. Fuersten (hereinafter called the defendant) was indicted for the murder of Harriet A. Vickers, and was convicted of murder in the first degree. No recommendation of life imprisonment was made by the jury, and he was sentenced to death. He now brings up for review the record of that conviction, together with certain bills of exceptions and a certificate of the entire proceedings had upon the trial.

At the trial, the evidence tended to show, among others, the following matters of fact:

The defendant is of foreign descent and forty-four years old. He has lived in this country for twenty-three years. He is a bachelor and lived in a room in the city of Camden. The decedent, Harriet A. Vickers, was a married woman (but separated from her husband), and was a waitress at a Camden club. He killed her on June 29th, 1926. The defendant and the decedent had been sexually intimate for two months prior to the killing. He objected to her associations with other men, and with a certain woman, and seventeen days before the killing he formed in his mind a purpose to kill both her and himself. During the intervening seventeen days he had further associations and sexual intercourse with her. About nine-thirty A. M. on the day of the tragedy she came to his room, in pursuance of an arrangement made by him. They undressed and laid upon the bed for an hour or more arguing or quarreling principally about her associations with a certain woman. Shortly before eleven o'clock he arose from the bed, took his revolver from the bureau, which was about ten feet distant from the bed, and shot her in the back, from which wound she thereafter died.

Thus far there is no dispute in the evidence. In fact, the defendant himself so testified, in effect, at the trial. It is true that he further testified that before the tragedy he had abandoned the purpose to kill her which he had formed seventeen days before. But in a statement made at police headquarters at ten forty-five o'clock in the evening of the day of the killing he admitted that during such period of seven-

teen days he had in his mind "occasionally, whenever anything happens between us," that purpose to kill her; that he made up his mind to get the revolver and shoot her while they were talking on the bed, and that he took the revolver from a bureau drawer. In no particular save one did the defendant, while on the witness-stand, deny that he made those statements. When called to testify at the trial he stated that the revolver was on and not in the bureau. He further testified that while he and the decedent were together he drank "two or three" glasses of cherry wine. While he testified that at the time of the shooting he was "dizzy," he did not say that he was intoxicated, and admitted that he knew what he was doing.

It is now argued on behalf of the defendant that by reason of drunkenness his mental state was such that he was incapable of deliberation and premeditation, which are essential to murder in the first degree, and, therefore, the verdict, which, of course, involved a finding of capacity for deliberation and premeditation, is against the weight of the evidence. This phase of the case was submitted to the jury by the trial judge and we think was rightly determined against the defendant by the jury. We believe that the verdict of murder was not against the weight of the evidence.

We shall consider the remaining points in the order in which they have been so thoroughly argued by Mr. Heher, of counsel for the defendant here, but who was not engaged at the trial.

The first point relates to the charge of the court. Two extracts from it are specified as causes for reversal, the contention being that the judge failed to properly instruct the jury that a specific intent to kill was essential to a conviction of murder in the first degree, and thereby, in effect, permitted the jury to convict of that degree upon a mere finding of an intent to do serious bodily harm, done deliberately and with premeditation.

We think that this contention is ill founded in point of fact. All that the court said upon the essentials of murder in the first degree must be considered as a whole, and if, when so considered, it is correct, not in conflict, and not mis-

leading to the jury, it will not lead to a reversal. *State* v. *Randall,* 95 *N. J. L.* 452; *State* v. *McDonald,* 89 *Id.* 421; *affirmed,* 91 *Id.* 233; *Kargman* v. *Carlo,* 85 *Id.* 632. Tested by this rule the instruction in question was correct. In it we find this: "Before you will be justified in finding the defendant guilty of murder in the first degree, the state must satisfy you beyond a reasonable doubt that before slaying his victim the accused had formed in his mind a specific intent to take life," and that it was carried out with deliberation and with premeditation. And that instruction, as we read the charge, was not in conflict with any other part, nor was the charge misleading.

The next point also relates to the charge. After having instructed the jury that to constitute murder in the first degree there must be an intention to take life, the judge charged the two extracts, both to the same effect, of which complaint is now made. They are in substance as follows: "No particular time need elapse between the formation of the design to take life and its willful and deliberate execution. All that was required is that there be sufficient time to fully and clearly conceive the design to kill and then to consider and deliberate the question whether to kill or not and thereafter to determine to execute the previously formed intention. If there was sufficient time for the defendant to consider and decide each of these requirements, it is enough."

It is not argued, and could not be successfully, that such instruction was an incorrect statement of the law. It is well within the rule upon this topic, which is: "To constitute murder in the first degree there must be an intention to take life. No particular length of time need intervene between the formation of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation should continue for an hour or a minute. It is enough that the design to kill be fully conceived and purposely executed." *State* v. *Bonofiglio,* 67 *N. J L.* 239.

The defendant's argument is that the reiteration of this statement of the law as to the time factor, emphasized the time factor rather than the intent essential to murder in the first degree to the prejudice of the defendant. But we do not

think that is so.  The mere fact that the judge in his instruction stated a second time a correct and pertinent proposition of law will not justify a reversal as prejudicial to the defendant.

The remaining objection to the charge relate to comments upon the evidence.

Under this head, it is contended that the judge, without any basis for the statement, said that the defendant admitted that he was prompted to do the act by the same cause that prompted him, on June 12th, 1926, to form the intention to kill both Mrs. Vickers and himself.  A careful examination satisfies us that the testimony justifies the statement made by the judge.

It is further contended in this connection that the judgment should be reversed because the judge, in commenting upon certain parts of the evidence, stated the inference which he would draw from it, without stating all of the evidence.

We think that this contention is not well founded in law. In a criminal trial it is always the right and often the duty of the judge to comment upon the evidence, and to tell the jury how the testimony strikes his mind, both as to its force and the inferences he would draw from it, and such expressions will not lead to a reversal so long as the right and duty of the jury to decide for themselves all disputed questions of fact is pointed out in the charge (*State* v. *Randall,* 95 *N. J. L.* 452; *State* v. *Seifert,* 86 *Id.* 706; *State* v. *Hummer,* 73 *Id.* 714), and that the trial judge did in the instant case.

The mere fact that, in commenting on the evidence upon certain phases of the case, the judge did not state all of the evidence, will not lead to a reversal so long as none of the material evidence is withdrawn from the consideration of the jury.  *State* v. *Schilling,* 95 *N. J. L.* 145.  Here it is not contended that any material evidence was withdrawn from consideration.  On the contrary, the judge told the jury expressly that they must consider all of the evidence in the case and must rely upon their own recollection as to the evidence.

The next point is that the judge committed prejudicial error in the exclusion of evidence during the examination of the defendant by his own counsel.  We incline to think

that there was no legal error, but we are clear that if there was it was not prejudicial to the defendant. If the evidence, which is the subject-matter of assignment number two, was offered for the purpose announced at the trial, of showing that the defendant did not procure the ring which he and the decedent went to the jeweler to purchase, its exclusion was not prejudicial to the defendant, and, therefore, will not lead to a reversal of the judgment. *State* v. *McDonald,* 89 *N. J. L.* 421; *affirmed,* 91 *Id.* 233; *State* v. *Jayson,* 94 *Id.* 467; *State* v. *Grace,* 98 *Id.* 341. If, on the other hand, as seems to be suggested now, the excluded evidence was offered to show defendant's purpose to buy a ring for the decedent, from which a friendly feeling at that time might be inferred, its exclusion was not prejudicial to the defendant because the defendant was afterwards permitted to testify, in effect, to having had that purpose on that occasion. No prejudicial error results from sustaining an objection to a question put to the defendant, where later during his examination he is permitted to testify, in effect, to the fact sought to be proved. *Clifford* v. *State,* 60 *Id.* 287; *Dayton* v. *Boettner,* 82 *Id.* 421; *Finkelstein* v. *Geismar,* 91 *Id.* 47; *affirmed,* 92 *Id.* 251; *Klie* v. *Hollstein,* 98 *Id.* 473; *Spence* v. *Hutchinson,* 102 *Id.* 131.

The excluded evidence, which is the subject-matter of the third assignment of error, was not prejudicial to the defendant in maintaining his defense.

The excluded evidence, which is the subject-matter of cause for reversal number four, was designed for the announced purpose of showing that the decedent was living separate and apart from her husband. It, however, appears that substantially the same question had been theretofore asked by the same counsel of the same witness, and that it was answered responsively, and, therefore, the exclusion of the evidence in question was not prejudicial to the defendant and will not lead to a reversal.

The excluded evidence, which is the subject-matter of cause for reversal number six, will not lead to a reversal because it appears that the defendant's counsel expressly stated at the time that he agreed with the ruling.

Assignment of error number four presents for consideration the action of the judge in overruling a leading question. But this assignment discloses no just cause for reversal. The refusal of the trial judge to allow a leading question to be put by the defendant's counsel to the defendant, whom he had called as a witness, is a discretionary matter, and will not lead to a reversal in the absence of a palpable abuse of discretion resulting in prejudice to the defendant. *Finkelstein* v. *Geismar,* 91 *N. J. L.* 47; *affirmed,* 92 *Id.* 251. Here, there was no abuse of discretion.

Our examination of the remaining assignments of error and causes for reversal relating to the exclusion of evidence results in the conclusion that they all fall within some one or more of the above-stated rules governing these matters, and so do not justify a reversal.

The only remaining point requiring consideration is that the court erred in denying an application for a new trial, made about three weeks after the verdict was rendered, because of alleged improper remarks made by the prosecutor of the pleas in his summation to the jury.

At the trial no objection was raised to the alleged improper statement, no request was made to the court to in anywise deal with it, and, consequently, the matter was entirely ignored by the court.

However, as stated, the denial of a new trial is now assigned as error and specified as a cause for reversal.

We think that it is sufficient to say, in disposing of this contention, that the denial by the trial court of a new trial in a criminal case, is not reviewable by writ of error, either as at common law or under the provisions of section 136 of the Criminal Procedure act of 1898. *State* v. *Schuck,* 96 *N. J. L.* 154; *State* v. *Comstock,* 95 *Id.* 321; *affirmed,* 96 *Id.* 299; *State* v. *Pisaniello,* 88 *Id.* 262; *State* v. *Kysilka,* 84 *Id.* 6; *affirmed,* 85 *Id.* 712; *State* v. *Van Stavern,* 67 *Id.* 235.

Finding no error prejudicial to the defendant, the judgment under review is affirmed.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Minturn, Kalisch, Black, Campbell, Lloyd, Van Buskirk, McGlennon, Kays, Hetfield, JJ. 12.

*For reversal*—None.